

# FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

APR 23 2015

APR 23 2015
Judge Samuel Der-Yeghiayan
U.S. District Court

UNITED STATES OF AMERICA

v.

DEAN R. LOPPNOW

No. 12 CR 110-2

Judge Samuel Der-Yeghiayan

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant DEAN R. LOPPNOW, and his attorney, ROBERT J. FEDOR, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

## Charges in This Case

2.     The indictment in this case charges defendant with conspiracy to defraud the United States of taxes due and owing by co-defendant Lynn S. Loppnow, by impeding, impairing, and obstructing the lawful functions of the IRS, in violation of Title 18, United States Code, Section 371 (Count 1), willfully attempting to evade and defeat the income tax due and owing by co-defendant Lynn S. Loppnow to the United States of America for the 2002 tax year, in violation of Title 26, United States Code, Section 7201 (Count 2), and failure to file a federal

1

income tax return, in violation of Title 26, United States Code, Section 7203 (Counts 6-8).

3.    Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.    Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5.    By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count Two, which charges defendant with willfully attempting to evade and defeat the income tax due and owing by co-defendant Lynn S. Loppnow to the United States of America for the 2002 tax year, in violation of Title 26, United States Code, Section 7201.

## Factual Basis

6.    Defendant will plead guilty because he is in fact guilty of the charge contained in Count Two of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Throughout calendar year 2002, and continuing to on or about February 23, 2006, at Hoffman Estates, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant Dean R. Loppnow willfully attempted to evade and defeat the income tax due and owing by co-defendant Lynn S. Loppnow, his wife, to the United States of America for the 2002 tax year by committing affirmative acts of evasion.

2

Specifically, during the calendar year 2002, Lynn S. Loppnow received a gross income of $137,409, but failed to file any federal income tax return for that year with the IRS. Lynn S. Loppnow did not pay federal taxes due and owing.

On October 26, 2004, the IRS served Lynn S. Loppnow with a deficiency letter, which notified her that she owed approximately $56,150 in taxes and penalties for the tax year 2002; however, Lynn S. Loppnow failed to make any required payments to the IRS.

In order to impede the IRS in its collection efforts, defendant and his wife created limited liability companies to hold assets on their behalf. On December 22, 2003, Lynn S. Loppnow obtained a certificate of organization for Swan Lake Ventures, LLC from the state of New Mexico. On or about September 20, 2005, defendant filed for a Certificate of Limited Liability Company for Alpha & Omega Enterprises, LLC with the state of Oklahoma.

On September 23, 2005, Lynn S. Loppnow registered with the Cook County Recorder of Deeds a mortgage in the amount of $500,000 on her and defendant's joint residence in Hoffman Estates; Swan Lake Ventures, LLC was listed as the mortgagee and it was payable in one installment on September 30, 2017. Defendant was aware of the registration of the mortgage, and knew that the purpose of the sham mortgage was to defeat the IRS's to collect Lynn S. Loppnow's 2002 taxes.

3

Defendant and Lynn S. Loppnow then withdrew money from their retirement funds at Ameritrade and moved the money into accounts owned by their Limited Liability Companies. On September 29, 2005, with the knowledge and agreement of defendant, Lynn S. Loppnow withdrew approximately $38,300 from her retirement fund at Ameritrade. On the same day, defendant withdrew approximately $142,236 from his retirement account at Ameritrade. Defendant and his wife elected not to have any federal taxes withheld from the distribution.

On October 9, 2005, with the knowledge and agreement of defendant, Lynn S. Loppnow opened a Scottrade account in the name of Swan Lake Ventures, LLC, listing Alpha and Omega as her employer, even though she was not employed by Alpha and Omega and in fact worked at Aflac. Lynn S. Loppnow gave defendant trading authority on the account, so he could use the funds in the account.

On October 11, 2005, defendant opened a Scottrade account in the name of Alpha & Omega Enterprises, LLC, listing Alpha & Omega as his employer, even though he was not employed by Alpha and Omega and in fact worked at Aflac.

On November 4, 2005, Lynn S. Loppnow withdrew approximately $202,000 from her retirement fund at Ameritrade. On December 5, 2005, Lynn S. Loppnow withdrew approximately $70,500 from her retirement fund at Ameritrade. Both withdrawals were made with the knowledge and agreement of defendant, and in both instances Lynn S. Loppnow elected not to have any federal taxes withheld from the distribution.

4

Defendant then agreed with Lynn S. Loppnow to transfer funds into his Alpha & Omega account. On December 8, 2005, with the knowledge and agreement of defendant, Lynn S. Loppnow transferred approximately $134,745 from her Swan Lake account to defendant's Alpha & Omega account. Four days later, Lynn S. Loppnow deposited a $38,300 check that she received from Ameritrade into her Swan Lake account and immediately requested that the money be transferred to defendant's Alpha & Omega account. On the same day, defendant deposited a $142,236 check that he received from Ameritrade into his Alpha & Omega account. On December 23, 2005, Lynn S. Loppnow transferred 837 shares of Aflac stock from her Swan Lake account to defendant's Alpha & Omega account.

On December 27, 2005, Lynn S. Loppnow filed for bankruptcy in the United States District Court for the Northern District of Illinois, Case # 05-64181, indicating in her petition that she had less than $50,000 in assets and over $50,000 in debts, and listing the $56,150 IRS levy as a debt. Defendant and Lynn S. Loppnow agreed to file the bankruptcy in order to impair the IRS's collection efforts. Defendant read the petition before it was filed, and knew that Lynn S. Loppnow owned more than $50,000 in assets when the petition was filed.

On the same day that the petition was filed, Lynn S. Loppnow called the IRS and gave defendant permission to speak on her behalf. Defendant then told the IRS that Lynn S. Loppnow had entered into bankruptcy and therefore the IRS should release the levy released on the bank accounts at American Chartered Bank, which

5

were jointly owned by defendant and Lynn S. Loppnow, because they could not pay their bills.

On February 23, 2006, with defendant's knowledge and agreement, Lynn S. Loppnow deposited the $202,000 and $70,500 checks that she received from Ameritrade into a Harris Bank account held by defendant in the name of High Tide Enterprises, LLC.

7.   The parties take the following positions regarding whether defendant's conduct, to which he stipulates, constitutes relevant conduct under Guideline § 1B1.3:

The parties agree that defendant did not file a United States Individual Tax Return for 2003, 2004, 2005, 2006, 2007, 2008, and 2009.  The parties also agree that defendant's tax loss during those years is relevant conduct under Guideline § 1B1.3.

It is the government's position that in 2003, defendant received at least $50,568 in income.  It is the defendant's position that in 2003, defendant received at least $62,290 in income.  The defendant knew he was required, as a result of the gross income he received in 2003, to file a United States Individual Tax Return for 2003.  Despite knowing he was required to file a tax return, defendant knowingly and willingly failed to do so.  The government's position is that defendant has a tax loss of $7,516 for 2003, for a total of $10,417.  Defendant's position is that he has a tax loss of $3,389 for 2003.

6

It is the government's position that in 2004, defendant received at least $116,309 in income. It is the defendant's position that in 2004, defendant received at least $106,616 in income. The defendant knew he was required, as a result of the gross income that he received in 2004, to file a United States Individual Tax Return for 2004. Despite knowing he was required to file a tax return, defendant knowingly and willingly failed to do so. The government's position is that defendant has a tax loss of $26,271 for 2004. Defendant's position is that he has a tax loss of $23,003.

It is the government's position that in 2005, defendant received at least $292,813 in income. It is the defendant's position that in 2005, defendant received at least $145,008 in income. The defendant knew he was required, as a result of the gross income that he received in 2005, to file a United States Individual Tax Return for 2005. Despite knowing he was required to file a tax return, defendant knowingly and willingly failed to do so. The government's position is that defendant has a tax loss of $87,766 for 2005. Defendant's position is that he has a tax loss of $36,081 for 2005.

It is the government's position that in 2006, defendant received at least $76,621 in income. It is the defendant's position that in 2006, defendant received at least $36,199 in income. The defendant knew he was required, as a result of the gross income that he received in 2006, to file a United States Individual Tax Return for 2006. Despite knowing he was required to file a tax return, defendant

7

knowingly and willingly failed to do so. The government's position is that defendant has a tax loss of $12,671 for 2006. Defendant's position is that he has a tax loss of $3,503 for 2006.

It is the government's position that in 2007, defendant received at least $122,933 in income. It is the defendant's position that in 2007, defendant received at least $82,338 in income. The defendant knew he was required, as a result of the gross income that he received in 2007, to file a United States Individual Tax Return for 2007. Despite knowing he was required to file a tax return, defendant knowingly and willingly failed to do so. The government's position is that defendant has a tax loss of $27,280 for 2007. Defendant's position is that he has a tax loss of $14,531 for 2007.

It is the government's position that in 2008, defendant received at least $96,637 in income. It is the defendant's position that in 2008, defendant received at least $61,650 in income. The defendant knew he was required, as a result of the gross income that he received in 2008, to file a United States Individual Tax Return for 2008. Despite knowing he was required to file a tax return, defendant knowingly and willingly failed to do so. The government's position is that defendant has a tax loss of $18,921 for 2008. Defendant's position is that he has a tax loss of $8,676 for 2008.

It is the government's position that in 2009, defendant received at least $81,084 in income. It is the defendant's position that in 2009, defendant received no

taxable income. The defendant knew that if he received at least $9,350 in gross income in 2009, he would be required to file a United States Individual Tax Return for 2009. The government's position is that defendant has a tax loss of $14,215 for 2009. Defendant's position is that he has no tax loss for 2009.

The following tables summarize the information in the paragraphs above:

| Year | US Government | | Defendant | |
|---|---|---|---|---|
| | Income | Tax Loss | Income | Tax Loss |
| 2003 | 50,568 | 7,516 | 62,290 | 3,389 |
| 2004 | 116,309 | 26,271 | 106,616 | 23,003 |
| 2005 | 292,813 | 87,766 | 145,008 | 36,081 |
| 2006 | 76,621 | 12,671 | 36,199 | 3,503 |
| 2007 | 122,933 | 27,280 | 82,338 | 14,531 |
| 2008 | 96,637 | 18,921 | 61,650 | 8,676 |
| 2009 | 81,084 | 14,215 | 0 | 0 |
| Total | | 194,640 | | 89,183 |

## Maximum Statutory Penalties

8.     Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.     A maximum sentence of 5 years' imprisonment. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

9

## Sentencing Guidelines Calculations

9.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points, except as specified below:

a.     **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2014 Guidelines Manual.

b.     **Offense Level Calculations**.

i.     It is the government's position that the base offense level is 18, pursuant to Guideline §§ 2T1.1(a)(1) and 2T4.1(H), because the tax loss involved in the offense of conviction and relevant conduct was $228,610. It is the defendant's position that the base offense level is 16, pursuant to Guideline §§ 2T1.1(a)(1) and 2T4.1(H), because the tax loss involved in the offense of conviction and relevant conduct was $89,345.

ii.     The offense level is increased by two levels, pursuant to Guideline § 2T1.1(b)(2), because the offense involved sophisticated means.

10

iii.     If the Court determines at the time of sentencing that defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level will be appropriate. The government reserves the right to take whatever position it deems appropriate at the time of sentencing with respect to whether defendant has accepted responsibility within the meaning of Guideline § 3E1.1(a).

iv.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.     **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

11

        d.      **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, it is the government's position that if the Court determines that defendant has accepted responsibility within the meaning of Guideline § 3E1.1(a), the anticipated offense level is 17, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 24 to 30 months' imprisonment, in addition to any supervised release and fine the Court may impose. It is the defendant's position that the anticipated offense level is 15, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 18 to 24 months' imprisonment, in addition to any supervised release and fine the Court may impose.

        e.      Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and

defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

11.     Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

12.     Each party is free to recommend whatever sentence it deems appropriate.

13.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13

14.    Regarding restitution, defendant agrees to pay restitution, arising from the offense conduct set forth above, totaling $89,345, pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664.

15.    Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16.    Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

17.    After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

18.    This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 12 CR 110-2.

19.    This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial

civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

20.     Defendant understands that nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant or defendant's partnership or corporations. Defendant understands that the amount of tax as calculated by the IRS may exceed the amount of tax due as calculated for the criminal case.

### Waiver of Rights

21.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

15

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

16

vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b.    **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

22.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

23.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the

17

nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

24.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

25.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be

18

sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

26.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

27.     Regarding matters relating to the Internal Revenue Service, defendant agrees as follows (nothing in this paragraph, however, precludes defendant or defendant's partnerships or corporations from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS):

a.     Defendant agrees to cooperate with the Internal Revenue Service in any tax examination or audit of defendant and defendant's partnerships or corporations which directly or indirectly relates to or arises out of the course of conduct that defendant has acknowledged in this Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records that the IRS may request.

b.     Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding,

19

pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant or defendant's partnerships or corporations. Nothing in this paragraph or the preceding paragraph precludes defendant or defendant's partnerships or corporations from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

28.    Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### Conclusion

29.    Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

30.    Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further

understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

31.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

32.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

21

33.    Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE:    4/23/15

ZACHARY T. FARDON
United States Attorney

DEAN R. LOPPNOW
Defendant

RENATO MARIOTTI
Assistant U.S. Attorney

ROBERT J. FEDOR
Attorney for Defendant

22